## UNITED STATES DISTRICT COURT
## MIDDLE DISTRICT OF FLORIDA
## TAMPA DIVISION

CYRUS JAVID,
an individual,

                                       Case No.:

      Plaintiff,

v.

FIRST BANK & TRUST,
SYNCHRONY BANK, COMENITY
CAPITAL BANK, CREDIT ONE
BANK, N.A., LVNV FUNDING, LLC,
a foreign limited liability company, and
EQUIFAX INFORMATION SERVICES, LLC,
a foreign limited liability company

      Defendants.
_____/

## COMPLAINT

**COMES NOW**, Plaintiff, CYRUS JAVID (hereinafter, "Plaintiff" or "Javid"), by and through the undersigned counsel, and hereby sues Defendants, FIRST BANK & TRUST (Hereinafter, FB&T), SYNCHRONY BANK (hereinafter, "Synchrony"), COMENITY CAPITAL BANK (Hereinafter, "Comenity"), CREDIT ONE BANK, N.A. (Hereinafter, "Credit One"), LVNV FUNDING, LLC (Hereinafter, "LVNV"), and Equifax Information Services, LLC. (hereinafter, "Equifax") (Hereinafter collectively, "Defendants").   In support thereof, Plaintiff states:

## PRELIMINARY STATEMENT

1.      This is an action for damages for violations of the Fair Credit Reporting Act, 15 United States Code, Section 1681 *et seq*. (hereinafter, the "FCRA") wherein FB&T, Synchrony, Comenity, Credit One, and LVNV—despite Plaintiff repeatedly disputing the inaccurate credit reporting of the subject fraudulent accounts and/or balances and statuses to Equifax and Co-

1

Defendants—continued to inaccurately report the fraudulent accounts and/or balances and statuses on Plaintiff's consumer credit report in violation of the FCRA.

## JURISDICTION, VENUE & PARTIES

2.       Jurisdiction of this Court arises under 28 United States Code, Section 1331 as well as pursuant to the FCRA, 15 United States Code Section 1681, *et seq*.

3.       Defendants are subject to the jurisdiction of this Court as FB&T, Synchrony, Comenity, Credit One, LVNV and Equifax each regularly transact business in this District, and the events described herein occur in this district.

4.       Venue is proper in this District as the acts and transactions described herein occur in this District.

5.       At all material times herein, Plaintiff is a natural person residing in Pasco County, Florida.

6.       At all material times herein, FB&T is a bank existing under the laws of the State of South Dakota with its principal place of business located at 520 6th Street, Brookings, South Dakota 57006.

7.       At all material times herein, Synchrony is a bank existing under the laws of the State of Utah with its principal place of business located at 170 West Election Road, Suite 125, Draper, Utah 84020.

8.       At all material times herein, Comenity is a bank existing under the laws of the State of Utah with its principal place of business located at 12921 South Vista Station Boulevard, Draper, Utah 84020.

9.       At all material times herein, Credit One is a national bank existing under the laws of the State of Nevada with its principal place of business located at 6801 South Cimarron Road,

Las Vegas, Nevada 89113.

10.     LVNV is a for-profit limited liability company existing under the laws of the State of Delaware with its principal place of business located at 6801 South Cimarron Road, Suite 424-J, Las Vegas, Nevada 89113.

11.     At all material times herein, Equifax is a foreign limited liability company existing under the laws of the state of Georgia with its principal place of business located at 1550 Peachtree Street, NW, Atlanta, GA 30309.

## FCRA STATUTORY STRUCTURE

12.     Congress enacted the FCRA requiring consumer reporting agencies to adopt reasonable procedures for meeting the needs of commerce for consumer credit, personnel, insurance, and other information in a manner fair and equitable to the consumer, with regard to the confidentiality, accuracy, relevancy, and proper utilization of such information.  *See* 15 United States Code, Section 1681b.

13.     Under the FCRA, whenever a consumer reporting agency prepares a consumer report, it shall follow reasonable procedures to assure *maximum possible accuracy* of the information concerning the individual about whom the report relates.  *Id.* at § e(b) (emphasis added).

14.     Under the FCRA, if a consumer disputes the completeness or accuracy of any item of information contained in a consumer's file, and the consumer notifies the agency directly of such dispute, the agency shall reinvestigate—free of charge—and report the current status of the disputed information, or delete the item from before the end of the 30-day period beginning on the date on which the agency receives notice of the consumer's dispute.  *Id.* at § i(a).

15.     Under the FCRA, when a consumer reporting agency conducts any reinvestigation

with respect to disputed information in the file of any consumer, the consumer reporting agency shall review and consider all relevant information submitted by the consumer.  *Id.* at § i(a)(4).

16.     Under the FCRA, if, after any reinvestigation of any information disputed by a consumer, an item of information is found to be inaccurate, incomplete, or cannot be verified, the consumer reporting agency shall promptly delete that item of information from the consumer's file or modify that item of information, as appropriate, based on the results of the reinvestigation.  *Id.* at § i(a)(5).

17.     Under the FCRA, after a furnisher of information receives notification pursuant to Section 1681i(a)(2) of a dispute with regard to the completeness or accuracy of any information provided by a person to a consumer reporting agency, the furnisher shall: (A) conduct an investigation with respect to the disputed information; (B) review all relevant information provided by the consumer reporting agency pursuant to Section 1681i(a)(2) of this title; (C) report the results of the investigation to the consumer reporting agency; and (D) if the investigation finds that the information is incomplete or inaccurate, report those results to all other consumer reporting agencies to which the person furnished the information and that compile and maintain files on consumers on a nationwide basis.  *Id.* at § s-2(b).

18.     Under the FCRA, any person who willfully fails to comply with any requirement imposed under this subchapter with respect to any consumer is liable to that consumer: in an amount equal to the sum of any actual damages sustained by the consumer as a result of the failure; for statutory damages of not less than $100 and not more than $1,000; for such amount of punitive damages as the court may allow; and for the costs of the action together with reasonable attorneys' fees. *Id.* at § n.

19.     Under the FCRA, any person who is negligent in failing to comply with any

requirement imposed with respect to any consumer is liable to that consumer in an amount equal to the sum of any actual damages sustained by the consumer as a result of the failure and the costs of the action together with reasonable attorney fees. *Id.* at § o.

## GENERAL ALLEGATIONS

20.     At all material times herein, Plaintiff is a "consumer" as defined by 15 United States Code, Section 1681a(c) because he is an individual.

21.     At all material times herein, Equifax is a "consumer reporting agency" as defined in 15 United States Code, Section 1681a(f) of the FCRA and regularly engages in the business of assembling, evaluating, and disseminating information concerning consumers for the purpose of furnishing consumer reports.  Equifax disburses such consumer reports to third parties under contract for monetary compensation

22.     At all material times herein, Defendants act themselves or through their agents, employees, officers, members, directors, successors, assigns, principals, trustees, sureties, subrogees, representatives, third-party vendors, and insurers.

23.     All necessary conditions precedent to the filing of this action occurred, or Defendants waived the same.

## FB&T Mercury Card

24.     At all material times herein, FB&T is the issuer of a "Mercury" credit card pursuant to a license from Mastercard International.

25.     At all material times herein, FB&T issued a Mercury credit card in the name of Plaintiff with an account number ending in 0660* (Hereinafter, "Mercury Card").

26.     At all material times herein, FB&T, itself and through its subsidiaries, regularly

services the credit of consumers in Pasco County, Florida.

27.     At all material times herein, FB&T is also a "person" that furnishes information to credit reporting agencies as provided in the FCRA and as defined by 15 United States Code, Section 1681s-2.

28.     At all material times herein, FB&T reports information concerning a consumer credit-card debt, including but not limited to, an alleged balance due from Plaintiff on the Mercury Card identified above.

## Rheem-KwikComfort Card

29.     At all material times herein, Synchrony is the issuer of a "Rheem-KwikComfort" credit card.

30.     At all material times herein, Synchrony issued a Rheem-KWICK Comfort branded credit card in the name of Plaintiff with an account number ending in 0345* (Hereinafter, "Rheem Card").

31.     At all material times herein, Synchrony, itself and through its subsidiaries, regularly services the credit of consumers in Pasco County, Florida.

32.     At all material times herein, Synchrony is also a "person" that furnishes information to credit reporting agencies as provided in the FCRA and as defined by 15 United States Code, Section 1681s-2.

33.     At all material times herein, Synchrony reports information concerning a consumer credit-card debt, including but not limited to, an alleged balance due from Plaintiff on the Rheem Card identified above.

## Wal-Mart Card

34.     At all material times herein, Synchrony is the issuer of a "Wal-Mart" credit card.

35.     At all material times herein, Synchrony issued a Wal-Mart branded credit card in

the name of Plaintiff with an account number ending in 5251* (Hereinafter, "Wal-Mart Card").

36.     At all material times herein, Synchrony, itself and through its subsidiaries, regularly services the credit of consumers in Pasco County, Florida.

37.     At all material times herein, Synchrony, itself and through its subsidiaries, regularly services the credit of consumers in Pasco County, Florida.

38.     At all material times herein, Synchrony is also a "person" that furnishes information to credit reporting agencies as provided in the FCRA and as defined by 15 United States Code, Section 1681s-2.

39.     At all material times herein, Synchrony reports information concerning a consumer credit-card debt, including but not limited to, an alleged balance due from Plaintiff on the Wal-Mart Card identified above.

## Amazon Card

40.     At all material times herein, Synchrony is the issuer of an "Amazon" credit card.

41.     At all material times herein, Synchrony issued an Amazon branded credit card in the name of Plaintiff with an account number ending in 5551* (Hereinafter, "Amazon Card").

42.     At all material times herein, Synchrony, itself and through its subsidiaries, regularly services the credit of consumers in Pasco County, Florida.

43.     At all material times herein, Synchrony is also a "person" that furnishes information to credit reporting agencies as provided in the FCRA and as defined by 15 United States Code, Section 1681s-2.

44.     At all material times herein, Synchrony reports information concerning a consumer credit-card debt, including but not limited to, an alleged balance due from Plaintiff on the Amazon

Card identified above.

## Comenity HSN Card

45.     At all material times herein, Comenity is the issuer of a "HSN" (Home Shopping Network) credit card pursuant to a license from Mastercard International.

46.     At all material times herein, Comenity issued a HSN branded credit card in the name of Plaintiff with an account number ending in 8245* (Hereinafter, "HSN Card").

47.     At all material times herein, Comenity, itself and through its subsidiaries, regularly services the credit of consumers in Pasco County, Florida.

48.     At all material times herein, Comenity is also a "person" that furnishes information to credit reporting agencies as provided in the FCRA and as defined by 15 United States Code, Section 1681s-2.

49.     At all material times herein, Comenity reports information concerning a consumer credit-card debt, including but not limited to, an alleged balance due from Plaintiff on the HSN Card identified above.

## Credit One Bank Card

50.     At all material times herein, Credit One is the issuer of a "Credit One" credit card.

51.     At all material times herein, Credit One issued a Credit One credit card in the name of Plaintiff with an account number ending in 8624* (Hereinafter, "Credit One Card").

52.     At all material times herein, Credit One, itself and through its subsidiaries, regularly services the credit of consumers in Pasco County, Florida.

53.     At all material times herein, Credit One is also a "person" that furnishes information to credit reporting agencies as provided in the FCRA and as defined by 15 United States Code,

Section 1681s-2.

54. At all material times herein, Credit One reports information concerning a consumer credit-card debt, including but not limited to, an alleged balance due from Plaintiff on the Credit One Card identified above.

55. Hereinafter, the Mercury Card, Rheem Card, Wal-Mart Card, Amazon Card, HSN Card, Credit One Card, JCP Card and PayPal Card (each as described *infra*) accounts may collectively be known as the "Card Accounts."

**LVNV Accounts**

56. At all material times herein, LVNV is a debt buyer and authorized debt collector in reference to an account ending in 8178* in the name of Plaintiff (Hereinafter, "8178 Account")

57. At all material times herein, LVNV is a debt buyer and authorized debt collector in reference to an account ending in 7141* in the name of Plaintiff (Hereinafter, "7141 Account").

58. At all material times herein, LVNV is a debt buyer and authorized debt collector in reference to an account ending in 8624* in the name of Plaintiff (Hereinafter, "8624 Account").

59. At all material times herein, LVNV is a debt buyer and authorized debt collector in reference to an account ending in 0933* in the name of Plaintiff (Hereinafter, "0933 Account").

60. Hereinafter, the LVNV 8178 Account, 7141 Account, 8642 Account, and 0933 Account may collectively be known as the "LVNV Accounts."

61. At all material times herein, LVNV, itself and through its subsidiaries, regularly services the credit of consumers in Pasco County, Florida.

62. At all material times herein, LVNV is also a "person" that furnishes information to credit reporting agencies as provided in the FCRA and as defined by 15 United States Code,

Section 1681s-2.

63.     At all material times herein, LVNV reports information concerning a consumer credit-card debt, including but not limited to, alleged balances due from Plaintiff on each of the LVNV accounts identified herein.

## FACTUAL ALLEGATIONS

64.     Plaintiff was the victim of identity-theft wherein an unknown party or parties used Plaintiff's personal identifying information to commit transactions and fraudulently incur debts on Plaintiff's existing lines of credit including, but not limited to, all accounts[1] at issue herein.

65.     In December 2018, Plaintiff obtained copies of his credit reports from Equifax, Experian, and Trans Union.

### Defendants' Reporting of Fraudulent Accounts, Inaccurate Balances, and Statuses

66.     According to the immediately-aforementioned reports, as of December 14, 2018, FB&T inaccurately reported the Mercury Card to Plaintiff's Equifax credit report as "charge off" and containing a balance due of $3,402.00.

67.     According to the immediately-aforementioned reports, as of December 14, 2018, Synchrony inaccurately reported the Rheem Card to Plaintiff's Equifax credit report as "charge off" and containing a balance due of $6,432.00.

68.     According to the immediately-aforementioned reports, as of December 14, 2018, Synchrony inaccurately reported the Wal-Mart Card to Plaintiff's Equifax credit report as "charge off" and containing a balance due of $7,026.00.

---

[1] Exclusive of the LVNV Accounts, which represent collections accounts established as a direct result of the fraudulent activity on Plaintiff's Card Accounts referenced herein.

69.     According to the immediately-aforementioned reports, as of December 14, 2018, Synchrony inaccurately reported the Amazon Card to Plaintiff's Equifax credit report as "charge off" and containing a balance due of $5,994.00.

70.     According to the immediately-aforementioned reports, as of December 14, 2018, Comenity inaccurately reported the HSN Card to Plaintiff's Equifax credit report as "charge off" and containing a balance due of $2,662.00.

71.     According to the immediately-aforementioned reports, as of December 14, 2018, Credit One inaccurately reported the Credit One Card to Plaintiff's Equifax credit report as "charge off."

72.     According to the immediately-aforementioned reports, as of December 14, 2018, LVNV inaccurately reported the 8178 Account to Plaintiff's Equifax credit report as "open" and containing a balance due of $7,449.00.

73.     According to the immediately-aforementioned reports, as of December 14, 2018, LVNV inaccurately reported the 7141 Account to Plaintiff's Equifax credit report as "open" and containing a balance due of $2,340.00.

74.     According to the immediately-aforementioned reports, as of December 14, 2018, LVNV inaccurately reported the 8624 Account to Plaintiff's Equifax credit report as "open" and containing a balance due of $3,185.00.

75.     According to the immediately-aforementioned reports, as of December 14, 2018, LVNV inaccurately reported the 0933 Account to Plaintiff's Equifax credit report as "open" and containing a balance due of $7,521.00.

76.     Additionally, according to the immediately-aforementioned reports, as of December 14, 2018, Synchrony inaccurately reported a JC Pennys account ending in 5718* (Hereinafter, "JCP Card") and a PayPal account ending in 1154* (Hereinafter, "PayPal Card").

77.     On December 14, 2018, upon discovering that he was a victim of identity theft, Plaintiff filed an Identity Theft Report with the United Stated Federal Trade Commission (FTC Report Number 102828378) (Hereinafter, "FTC ID Theft Report").

78.     Plaintiff's FTC ID Theft Report specifically identified all accounts containing fraudulent charges and balances including, but not limited to, each account at issue herein.

**First Dispute to Equifax**

79.     On or about December 17, 2018, Plaintiff sent a dispute to Equifax,[2] disputing the inaccurate information that FB&T, Synchrony, Comenity, Credit One, and LVNV communicated and reported on Plaintiff's credit report (Hereinafter, "First Dispute").

80.     Equifax received the First Dispute, assigned it confirmation numbers 8359016635, 8359016643, 8359016650, and 8359016791.

81.     Equifax communicated Plaintiff's First Dispute to FB&T, Synchrony, Comenity, Credit One, and LVNV.

82.     Between December 25, 2018 and January 14, 2019, Equifax issued its decision on the merits of Plaintiff's First Dispute.

83.     On or about December 25, 2018, Equifax responded to Plaintiff in writing stating, "Please be advised that Equifax, at this time, will not block the information subject to the submitted identify and/police report you provided as part of your dispute."

84.     Despite Plaintiff's First Dispute to Equifax detailing the inaccurate reporting,

---

[2] Plaintiff also concurrently disputed the accounts identified herein to credit reporting agencies Experian Information Solutions, Inc. and Trans Union, LLC.

Equifax did not correct the disputed inaccurate information and continued to report the accounts as containing an open or charged-off status, and—except in relation to the Credit One Card—containing a balance owed.

85.     Unlike Equifax, on or about December 31, 2018, upon receipt of Plaintiff's First Dispute, Experian correctly deleted the Mercury Card, Amazon Card, HSN Card, Rheem Card, Wal-Mart Card, Credit One Card, PayPal Card, JCP Card and all LVNV accounts identified herein.

86.     Unlike Equifax, on or about January 15, 2019, upon receipt of Plaintiff's First Dispute, Trans Union correctly deleted the Mercury Card, Amazon Card, Rheem Card, Wal-Mart Card, Credit One Card, PayPal Card, JCP Card and three LVNV accounts identified herein.

## Second Dispute to Equifax

87.     Between January 1, 2019 and January 5, 2019, a second dispute was communicated to Equifax, disputing the inaccurate information that FB&T, Synchrony, Comenity, Credit One, and LVNV communicated and reported on Plaintiff's credit report (Hereinafter, "Second Dispute").

88.     Equifax assigned the Second Dispute confirmation numbers 9001005187, 9002005129, 9004030103, 9004030678, and 9075075307.

89.     Equifax communicated the Second Dispute to FB&T, Synchrony, Comenity, Credit One, and LVNV.

90.     Between January 1, 2019 and January 7, 2019, Equifax issued its decision on the merits of the Second Dispute.

91.     Despite the Second Dispute to Equifax, Equifax did not correct the disputed inaccurate information and continued to report the accounts as containing an open or charged-off

status, and—except in relation to the Credit One Card—containing a balance owed.

### Third Dispute to Equifax

92.    On or about March 12, 2019, a third dispute was communicated to Equifax, disputing the inaccurate information that FB&T, Synchrony, Comenity, Credit One, and LVNV communicated and reported on Plaintiff's credit report (Hereinafter, "Third Dispute").

93.    Equifax received the Third Dispute, assigned it confirmation numbers 9075075307 and 9075075359.

94.    Equifax communicated the Third Dispute to FB&T, Synchrony, Comenity, Credit One, and LVNV.

95.    On or about May 9, 2019, Equifax issued its decision on the merits of the Third Dispute.

96.    Despite the Third Dispute to Equifax, Equifax did not correct the disputed inaccurate information and continued to report the accounts as containing an open or charged-off status, and—except in relation to the Credit One Card—containing a balance owed.

### Fourth Dispute to Equifax

97.    On or about May 23, 2019, Plaintiff sent a fourth dispute to Equifax, disputing the inaccurate information that FB&T, Synchrony, Comenity, Credit One, and LVNV communicated and reported on Plaintiff's credit report (Hereinafter, "Fourth Dispute").

98.    Equifax received the Fourth Dispute, assigned it confirmation number 9150001874.

99.    Equifax communicated Plaintiff's Fourth Dispute to FB&T, Synchrony, Comenity, Credit One, and LVNV.

100.    On or about June 22, 2019, Equifax issued its decision on the merits of Plaintiff's

Fourth Dispute.

101.    Despite Plaintiff's Fourth Dispute to Equifax detailing the inaccurate reporting, Equifax did not correct the disputed inaccurate information and continued to report the accounts as containing an open or charged-off status, and—except in relation to the Credit One Card—containing a balance owed.

### Some Accounts Selectively Deleted by Equifax Based Upon Same Facts

102.    Ultimately, in June 2019—after "verifying" the accuracy of the JCP Card in the face of multiple disputes—Equifax and Synchrony deleted the inaccurately reported JCP Card.

103.    Additionally, in June 2019—after "verifying the accuracy of the PayPal Card in the face of multiple disputes—Equifax and Synchrony deleted the inaccurately reported PayPal Card.

104.    Equifax's selective deletion of the Synchrony JCP Card and PayPal Card—again based upon the exact same information provided by Plaintiff concerning the fraudulent nature of the charges on the accounts at issue in this case—evidence Equifax's willfull and/or negligent failure to establish or follow reasonable procedures to assure maximum possible accuracy, failure to conduct reasonable re-investigations, failure to review and consider all relevant information received in Plaintiff's disputes, and failure to update or delete information that could not be verified.

### Plaintiff's Credit Denials

105.    On or about June 11, 2019, Plaintiff applied for, and was denied, an extension of credit from Hyundai Motor Finance based upon inaccurate information contained in his Equifax consumer credit report.

106.    On or about June 22, 2019, Plaintiff applied for, and was denied, an extension of credit from BB&T Dealer Finance based upon inaccurate information contained in his Equifax

consumer credit report.

107.    On or about June 11, 2019, Plaintiff applied for, and was denied, an extension of credit from Honda Financial Services based upon inaccurate information contained in his Equifax consumer credit report.

108.    Plaintiff has retained Undersigned Counsel for the purpose of pursuing this matter against Defendants, and Plaintiff is obligated to pay his attorneys a reasonable fee for their services.

109.    The FCRA, Sections 1681n or 1681o, or both, provide for the award of up to $1,000.00 statutory damages, actual damages, punitive damages, as well as an award of attorneys' fees and costs to Plaintiff, should Plaintiff prevail in this matter against Defendants.

110.    As a result of the inaccurate reporting of the Debt on Plaintiff's credit reports, Plaintiff incurred higher interest rates and less favorable terms on consumer loans and other consumer transactions—including, at a minimum, the credit denials referenced above—and he was continually evaluated for credit using consumer reports that inaccurately reported the Debt.

111.    Additionally, as a result of Defendants' actions, Plaintiff suffered emotional distress, anxiety, inconvenience, frustration, annoyance, fear, loss of sleep, and confusion, believing that despite the fact that the fraudulent debts were not his, and despite Plaintiff's dispute efforts and following of all appropriate avenues for relief, Plaintiff must endure the erroneous and inaccurate reporting of accounts identified herein.

112.    Plaintiff further dealt with the stress and anxiety of feeling hopeless, believing that he would continue to be denied credit as a result of the erroneous and incorrect reporting of the accounts identified herein and that Plaintiff would instead pay higher interest rates in the event he could obtain financing.  In fact, Plaintiff suffered additional actual damages in the form of damage

to his credit reputation, higher credit costs, and other additional costs and fees.

## COUNT ONE
## FAIR CREDIT REPORTING ACT –
## <u>VIOLATION OF 15 UNITED STATES CODE, SECTION 1681e(b)</u>

Plaintiff re-alleges paragraphs one (1) through one-hundred-twelve (112) as if fully restated herein and further state as follows:

113.   Equifax is subject to, and violated the provisions of, 15 United States Code, Section 1681e(b), by failing to establish or follow reasonable procedures to assure maximum possible accuracy in the preparation of the credit reports and credit files published and maintained concerning Plaintiff.

114.   Equifax willfully and/or negligently failed to establish or follow reasonable procedures to assure maximum possible accuracy in the preparation of Plaintiff's credit reports regarding the accounts identified herein.

115.   Specifically, even though the accounts' respective balances and statuses were fraudulent, Equifax incorrectly reported adverse and incorrect information concerning the accounts identified herein, as noted above.

116.   Further, Equifax willfully and/or negligently failed to establish or follow reasonable procedures to assure maximum possible accuracy of Plaintiff's credit reports and credit files when re-investigating Plaintiff's disputes of the above-referenced inaccuracies contained in his Equifax credit report.

117.   For example, despite Plaintiff's disputes of the accounts' balances and statuses identified herein, and despite Plaintiff's FTC ID Theft Report, Equifax did not undertake any investigation to determine whether the accounts and/or their respective balances were fraudulent.

118.   Such reporting of the accounts, balances, and statuses identified herein is false and

evidences Equifax's failure to establish or follow reasonable procedures to assure the maximum possible accuracy of Plaintiff's credit reports and credit file.

119.     Importantly, Equifax each possessed actual knowledge of Plaintiff's dispute of the accounts and/or balances and statuses as the product of identity fraud, as described in Plaintiff's disputes. Notwithstanding, Equifax failed to delete the accounts, even after Plaintiff's disputes.

120.     As a result of Equifax's conduct, actions, and inactions, Plaintiff incurred higher interest rates and less favorable terms on consumer loans and other consumer transactions, including—at a minimum—the credit denials referenced above.

121.     Equifax's actions were a direct and proximate cause of, as well as a substantial factor in, the serious injuries, damages, and harm to Plaintiff as stated herein.

122.     Equifax's violations of 15 United States Code, Section 1681e(b), constitute negligent or willful noncompliance—or both—with the FCRA, and entitle Plaintiff to actual damages, statutory damages, punitive damages, as well as attorneys' fees and costs as enumerated in 15 United States Code, Sections 1681n, or 1681o, or both.

**COUNT TWO:**
**FAIR CREDIT REPORTING ACT –**
**<u>VIOLATION OF 15 UNITED STATES CODE, SECTION 1681i(a)(1)</u>**

Plaintiff re-alleges paragraphs one (1) through one-hundred- twelve (112) as if fully restated herein and further state as follows:

123.     Equifax is subject to, and violated the provisions of, 15 United States Code, Section 1681i(a)(1), by failing to conduct reasonable re-investigations of Plaintiff's disputes to determine whether the disputed information was inaccurate and by failing to subsequently update the inaccurate information in Plaintiff's credit reports and credit file.

124.     Specifically, Equifax each willfully and/or negligently refused to properly re-

18

investigate Plaintiff's consumer reports upon receiving Plaintiff's disputes, as described herein.

125.     For example, despite receiving Plaintiff's disputes detailing the identity theft and fraudulent charges on the accounts identified herein, Equifax's re-investigations were not conducted in such a way as to assure the maximum possible accuracy of the accounts and/or their respective balances and statuses on Plaintiff's credit reports.

126.     As noted above, even though the accounts' respective balances and statuses were fraudulent, Equifax failed to conduct any meaningful investigation and instead continued to inaccurately report the accounts identified herein as belonging to Plaintiff and/or containing incorrect balances and statuses.

127.     Such reporting is false and evidences Equifax's failure to conduct reasonable re-investigations of Plaintiff's disputes.

128.     Equifax's reinvestigations of Plaintiff's disputes were not conducted reasonably.

129.     Equifax's reinvestigations merely copied and relied upon the inaccurate account information conveyed by FB&T, Synchrony, Comenity, Credit One, and LVNV.

130.     Equifax's reinvestigations of Plaintiff's disputes were not conducted in good faith.

131.     Equifax's reinvestigation procedures are unreasonable.

132.     Equifax's re-investigations of Plaintiff's disputes were not conducted using all information reasonably available to Equifax.

133.     Equifax's reinvestigations were *per se* deficient by reason of these failures in Equifax's reinvestigations of Plaintiff's disputes and the accounts identified herein.

134.     Equifax's actions in violation of 15 United States Code, Section 1681i(a)(1), constitute negligent or willful noncompliance—or both—with the FCRA, and entitles Plaintiff to actual damages, statutory damages, punitive, damages, as well as attorneys' fees and costs as

enumerated in 15 United States Code, Sections 1681n or 1681o, or both.

## COUNT THREE:
## FAIR CREDIT REPORTING ACT –
## VIOLATION OF 15 UNITED STATES CODE, SECTION 1681i(a)(4)

Plaintiff re-alleges paragraph one (1) through one-hundred- twelve (112) as if fully restated herein and further states as follows:

135.    Equifax is subject to, and violated the provisions of, 15 United States Code, Section 1681i(a)(4), by failing to review and consider all relevant information received in Plaintiff's disputes, including all relevant attachments.

136.    Specifically, despite receiving Plaintiff's disputes, which discussed the identity fraud and provided the FTC ID Theft Report, Equifax willfully and/or negligently failed to review and consider all information received in Plaintiff's disputes about the accounts identified herein.

137.    Equifax's failure to review and consider all information received in Plaintiff's disputes was done in bad faith.

138.    Equifax's actions in violation of 15 United States Code, Section 1681i(a)(4), constitute negligent or willful noncompliance—or both—with the FCRA, and entitles Plaintiff to actual damages, statutory damages, punitive damages, as well as attorneys' fees and costs as enumerated in 15 USC, Sections 1681n or 1681o, or both.

## COUNT FOUR:
## FAIR CREDIT REPORTING ACT –
## VIOLATION OF 15 UNITED STATES CODE, SECTION 1681i(a)(5)

Plaintiff re-alleges paragraphs one (1) through one-hundred- twelve (112) as if fully restated herein and further states as follows:

139.    Equifax is subject to, and violated the provisions of, 15 United States Code, Section 1681i(a)(5), by failing to update or delete any information that was the subject of Plaintiff's

disputes as inaccurate or that could not be verified.

140.    Specifically, despite receiving Plaintiff's disputes, which discussed the identity fraud and provided the FTC ID Theft Report, Equifax willfully and/or negligently failed to update or delete the information on Plaintiff's credit reports with respect to the accounts identified herein that was either inaccurate and could not be verified.

141.    As a result of Equifax's conduct, actions, and inactions, Plaintiff incurred higher interest rates and less favorable credit terms on consumer loans and other consumer transactions, including—at a minimum—the credit denials referenced above.

142.    Equifax's actions were a direct and proximate cause of, as well as a substantial factor in, Plaintiff's serious injuries, damages, and harm as more fully stated herein.

143.    Equifax's actions in violation of 15 United States Code, Section 1681i(a)(5), constitute negligent or willful noncompliance—or both—with the FCRA, and entitles Plaintiff to actual damages, statutory damages, punitive damages, as well as attorneys' fees and costs as enumerated in 15 USC, Sections 1681n or 1681o, or both.

## COUNT FIVE:
## FAIR CREDIT REPORTING ACT –
## VIOLATION OF 15 UNITED STATES CODE, SECTION 1681s-2(b)

Plaintiff re-alleges paragraphs one (1) through one-hundred- twelve (112) as if fully restated herein and further states as follows:

144.    FB&T, Synchrony, Comenity, Credit One, and LVNV are subject to, and each violated the provisions of, 15 United States Code, Section 1681s-2(b), by willfully and/or negligently publishing or furnishing inaccurate trade-line information within Plaintiff's credit reports, failing to fully and properly re-investigate Plaintiff's disputes, failing to review all relevant information regarding the same, and failing to correctly report the accounts identified herein on

Plaintiff's credit reports after re-investigating Plaintiff's disputes.

145.    As described above, despite receiving notice of Plaintiff's disputes, FB&T, Synchrony, Comenity, Credit One, and LVNV each willfully and/or negligently reported inaccurate credit information regarding the accounts identified herein to Equifax.

146.    Specifically, after receiving notice of Plaintiff's disputes and possessing actual knowledge that the balances and statuses of the accounts' identified herein were the direct result of identity theft and did not represent transactions incurred by Plaintiff, FB&T, Synchrony, Comenity, Credit One, and LVNV inaccurately reported the accounts as accurate, containing a status of either "charged-off" or "open," and carrying a balance[3] owed.

147.    Each of the immediately-aforementioned inaccuracies ultimately reflected negatively and adversely on Plaintiff's Equifax credit reports and credit files.

148.    Further, FB&T, Synchrony, Comenity, Credit One, and LVNV reported and communicated the immediately-aforementioned inaccurate information with actual knowledge that the accounts identified herein contained balances and statuses that were the direct result of identity fraud and transactions not incurred by Plaintiff.

149.    FB&T, Synchrony, Comenity, Credit One, and LVNV's re-investigations were not conducted in good faith.

150.    FB&T, Synchrony, Comenity, Credit One, and LVNV's re-investigations were not conducted reasonably.

151.    FB&T, Synchrony, Comenity, Credit One, and LVNV's re-investigations were not conducted using all information reasonably available to FB&T, Synchrony, Comenity, Credit One,

---

[3] The only exception is that, in relation to the Credit One Card, no balance was reported owing, the same presumably having been turned over to a debt collector for collection activities.

and LVNV.

152.    As a result of FB&T, Synchrony, Comenity, Credit One, and LVNV's conduct, actions, or inactions, Plaintiff was unable to obtain or maintain credit at market rates and terms for individuals who did not have outstanding, late, or past-due balances reported on their credit reports.

153.    FB&T, Synchrony, Comenity, Credit One, and LVNV's conduct was a direct and proximate cause of, as well as a substantial factor in, causing the serious injuries, damages, and harm to Plaintiff as stated herein—including, at a minimum, the credit denials referenced above.

154.    FB&T, Synchrony, Comenity, Credit One, and LVNV's actions in violation of 15 United States Code, Section 1681s-2(b), constitute negligent or willful noncompliance, or both, with the FCRA, and entitles Plaintiff to actual damages, statutory damages, and punitive damages, as well as attorneys' fees and costs as enumerated in 15 United States Code, Sections 1681n or 1681o, or both.

## **PRAYER FOR RELIEF**

**WHEREFORE**, as a direct and proximate result of Defendants' conduct, Plaintiff respectfully request an entry of:

a.    Judgment against FB&T, Synchrony, Comenity, Credit One, LVNV, and Equifax for maximum statutory damages for violations of the FCRA;

b.    Judgment enjoining Defendants from engaging in further conduct in violation of the FCRA;

c.    Actual damages in an amount to be determined at trial;

d.    Compensatory damages in an amount to be determined at trial;

e.    Punitive damages in an amount to be determined at trial;

f.    An award of attorney's fees and costs; and

g.        Any other such relief the Court may deem proper.

### DEMAND FOR JURY TRIAL

Plaintiff hereby demands a trial by jury on all issues triable by right.

### SPOLIATION NOTICE AND DEMAND TO RETAIN EVIDENCE

Plaintiff hereby give notice to Defendants and demands that Defendants and their affiliates safeguard all relevant evidence—paper, electronic documents, or data—pertaining to this litigation as required by law.

Respectfully submitted,

**SWIFT, ISRINGHAUS & DUBBELD P.A.**

*/s/ Jordan T. Isringhaus*
**Aaron M. Swift, Esq., FBN 0093088**
**Jordan T. Isringhaus, Esq., FBN 0091487**
**Jon P. Dubbeld, Esq., FBN 105869**
10460 Roosevelt Blvd. North
Suite 313
St. Petersburg, FL 33703
Phone: (813) 563-8466
Fax: (727) 255-5332
aswift@swift-law.com
jisringhaus@swift-law.com
jdubbeld@swift-law.com
*Counsel for Plaintiff*